F I L E D
CLERK, U.S. DISTRICT COURT

5/25/2023

CENTRAL DISTRICT OF CALIFORNIA
BY: ____TV____ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

October 2022 Grand Jury

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br><br>     v.<br><br>SAI ZHANG,<br>  aka "Tommy,"<br>PANYU ZHAO,<br>  aka "Yu,"<br>PEIJI TONG,<br>  aka "PJ,"<br>  aka "Dr P,"<br>CHENGWU HE,<br>HANG SU,<br>XUANYI MU,<br>JIAYONG YU,<br>SHUO YANG,<br>XIAOLEI YE, and<br>JIAXUAN HE,<br><br>          Defendants. | CR 2:23-cr-00258-DMG<br><br>I N D I C T M E N T<br><br>[18 U.S.C. § 1956(h): Conspiracy to Launder Monetary Instruments; 18 U.S.C. § 371: Conspiracy to Operate an Unlicensed Money Transmitting Business; 18 U.S.C. §§ 982(a)(1) and 981(a)(1)(C) and 28 U.S.C. § 2461(c): Criminal Forfeiture] |

     The Grand Jury charges:

INTRODUCTORY ALLEGATIONS

At times relevant to this Indictment:

A. <u>TRADE IN GOODS FROM CHINA WAS USED TO CIRCUMVENT THE RESTRICTIONS ON TAKING FUNDS OUT OF CHINA</u>

1. The People's Republic of China ("PRC") maintained its economic strength in part by imposing a closed system of investment on its citizens. That is, individuals who live, work, or invest in the PRC were restricted from transferring more than the equivalent of $50,000 per year out of China. Consequently, many individuals with holdings in China who wished to transfer assets greater than $50,000 in value to the United States sought alternative methods outside the conventional banking system to move their funds. These informal value transfer systems ("IVTS") required the participation of brokers who buy and sell United States dollars in the United States.

2. To transfer funds to the United States, an individual in China would contact a broker with dollars to sell in the United States. The individual in China would then transfer the equivalent amount in Chinese currency (renminbi) to an account in China specified by the broker. Once the broker received electronic confirmation that the amount in question had been moved to the specified account, the broker would arrange for the dollars in the United States to be released to the buyer or to a designated representative of the buyer.

3. The seller of United States currency in the United States would obtain dollars in a variety of ways, including by accepting cash from individuals engaged in criminal activity that generated large amounts of bulk currency, such as drug trafficking. The U.S.

broker would charge a percentage commission as a fee to the criminal owner of the proceeds to launder the funds.

4.  The funds that were transferred in China to the broker were then used to pay for goods purchased by businesses in Mexico, Colombia, or elsewhere. Once the goods were sold, generating local currency (for example, Mexican pesos), the proceeds would be returned to the drug trafficking organization that provided the dollars in the United States. In this way, the funds from China facilitated the laundering of drug proceeds from the United States to the source country, while at the same time providing United States dollars to the individual from China who initiated the transaction.

B.  <u>LICENSING REQUIREMENTS FOR ANY PERSON WHO ENGAGES IN TRANSMITTING FUNDS AS A BUSINESS BY ANY MEANS, INCLUDING BY COURIER</u>

5.  Under federal law, Title 31, United States Code, Section 5330 required the registration as a money transmitting business by any person who engaged as a business in an informal money transfer system or any network of people who engaged as a business in facilitating the transfer of money domestically or internationally outside of the conventional financial institutions system with the United States Department of the Treasury, Financial Crimes Enforcement Network.

6.  Under federal law, Title 31, Code of Federal Regulations, Section 1010.100(ff)(5)(i), a "money transmitter" was (1) a person that provided money transmission services by accepting currency, funds, or other items of value that substitute for currency from one person and transmitting that currency, funds or other items of value that substitute for currency to another location or person by any

means, including through a financial institution, an electronic funds transfer network, or an informal value transfer system; or (2) any other person engaged in the transfer of funds.  A "money transmitter" was required to be licensed by both federal and state law, and failure to register under either federal or state law was a federal offense under Title 18, United States Code, Section 1960.

7. None of the defendants, nor any business owned by any defendant, was licensed under state or federal law regulations as a lawful money transmitter.

8. Title 18, United States Code, Sections 1960(a) and (b) prohibited the operation of an unlicensed money transmitting business.

9. Title 18, United States Code, Section 1960(c) prohibited the transportation or transmission of funds that were known to the defendant to have been derived from a criminal offense or were intended to be used to promote or support unlawful activity.

10. These Introductory Allegations are incorporated into each count of this Indictment.

COUNT ONE

[18 U.S.C. § 1956(h)]

[DEFENDANT SAI ZHANG]

A.  OBJECT OF THE CONSPIRACY

Beginning in or about 2019, and continuing until on or about May 12, 2023, defendant SAI ZHANG, also known as "Tommy," and others known and unknown to the Grand Jury, conspired and agreed with each other to commit an offense against the United States, namely:

To conduct and attempt to conduct a financial transaction affecting interstate and foreign commerce, which transaction involved the proceeds of a specified unlawful activity, that is, the felony importation, manufacturing, receiving, concealment, buying, selling, and otherwise dealing in controlled substances punishable under the laws of the United States, knowing that the transaction was designed in whole or in part to conceal and disguise the nature, location, source, ownership, and control of the proceeds of said specified unlawful activity, and knowing that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.  Defendant ZHANG would arrange to obtain United States bulk currency that was the proceeds of drug trafficking.

2.  Defendant ZHANG would instruct co-conspirators Panyu Zhao and Peiji Tong to distribute the United States currency to defendant

ZHANG's customers who had purchased the dollars by providing equivalent value in renminbi in China.

3.  Co-conspirator Tong would instruct co-conspirator Jiaxuan He to pick up the United States currency from the representatives of the drug traffickers in Los Angeles County and elsewhere and deliver the drug proceeds to defendant ZHANG's customers.

4.  Defendant ZHANG and co-conspirator Zhao would instruct co-conspirators Xuanyi Mu, Hang Su, and Xiaolei Ye to pick up the United States currency from the representatives of the drug traffickers in Los Angeles County and elsewhere and deliver the drug proceeds to defendant ZHANG'S customers.

5.  Co-conspirator Chengwu He would maintain and operate a premises for the collection, counting, processing, and repackaging of drug proceeds for co-conspirators to facilitate the collection and distribution of the drug proceeds.

6.  Co-conspirators Jiayong Yu and Shuo Yang would act as couriers to pick up drug proceeds and deposit those funds into bank accounts controlled by defendant ZHANG and others known to the Grand Jury.

C.  OVERT ACTS

On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendant ZHANG, and others known and unknown to the Grand Jury, committed the following overt acts, among others, within the Central District of California and elsewhere:

1.  On or about December 5, 2019, in San Gabriel, California, defendant ZHANG sold drug proceeds totaling approximately $60,000 in United States currency to an individual he believed to be a money

exchange broker, but who was in fact a confidential informant working for law enforcement ("CS-1").

2. On or about September 4, 2020, in Arcadia, California, at the direction of defendant ZHANG, co-conspirators Mu and Su took delivery of approximately $34,000 in drug proceeds from an unknown female courier.

3. On or about May 12, 2023, in San Gabriel, California, defendant ZHANG possessed approximately $150,000 in United States currency, concealed inside a white plastic bag.

COUNT TWO

[18 U.S.C. § 371]

[ALL DEFENDANTS]

A.  OBJECT OF THE CONSPIRACY

Beginning in or about 2019, and continuing until on or about May 12, 2023, in Los Angeles County, within the Central District of California, and elsewhere, defendants SAI ZHANG, aka "Tommy," PANYU ZHAO, aka "Yu," PEIJI TONG, aka "PJ" aka "Dr P," CHENGWU HE, HANG SU, XUANYI MU, JIAYONG YU, SHUO YANG, XIAOLEI YE, and JIAXUAN HE, and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally operate an unlicensed money transmitting business affecting interstate and foreign commerce, in violation of Title 18, United States Code, Sections 1960(a) and 1960(b)(1)(A),(B), and (C).

B.  MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished, in substance, as follows:

1.  Defendant ZHANG would arrange to obtain United States bulk currency that was the proceeds of drug trafficking.

2.  Defendant ZHANG would instruct defendants TONG and ZHAO to distribute the United States currency to defendant ZHANG's customers who had purchased the dollars by providing equivalent value in renminbi in China.

3.  Defendant TONG would instruct defendant JIAXUAN HE and others to pick up the United States currency from the representatives of criminal organizations in Los Angeles County and elsewhere and deliver the United States currency to defendant ZHANG's customers.

    4.    Defendants ZHANG and ZHAO would instruct defendants MU, SU, and YE to pick up the United States currency from the representatives of the drug traffickers in Los Angeles County and elsewhere and deliver the funds to defendant ZHANG's customers.

    5.    Defendant CHENGWU HE would pick up United States currency from the representatives of criminal organizations and deliver the United States currency to defendant ZHANG's customers.

    6.    Defendant CHENGWU HE would maintain and operate a premises for the collection, counting, processing, and repackaging of United States currency co-conspirators to facilitate the collection and distribution of the United States currency.

    7.    Defendants YU and YANG would act as couriers to pick up United States currency and deposit those funds into bank accounts controlled by defendant ZHANG and others known to the Grand Jury.

C.    <u>OVERT ACTS</u>

    On or about the following dates, in furtherance of the conspiracy and to accomplish its object, defendants ZHANG, ZHAO, TONG, CHENGWU HE, SU, MU, YU, YANG, YE, JIAXUAN HE, and others known and unknown to the Grand Jury, committed the following overt acts, among others, within the Central District of California and elsewhere:

    1.    On December 5, 2019, in San Gabriel, California, defendant ZHANG sold approximately $60,000 in United States currency to an individual he believed to be a money exchange broker, but who was in fact a confidential informant working for law enforcement ("CS-1").

    2.    On January 16, 2020, in San Gabriel, California, a co-conspirator instructed CS-1 to deliver approximately $50,000 in United States currency to defendant CHENGWU HE so that defendant

CHENGWU HE could pay an exchange customer who had purchased United States dollars.

3. On January 16, 2020, in Monterey Park, California, defendant CHENGWU HE accepted $50,000 in United States currency from CS-1.

4. On January 16, 2020, in Bell Gardens, California, defendant CHENGWU HE delivered an unknown sum of United States currency to an unknown male at the Bicycle Casino.

5. On January 16, 2020, in Monterey Park, California, defendant CHENGWU HE possessed approximately $55,286 in United States currency.

6. On September 4, 2020, in Arcadia, California, defendants MU and SU accepted $34,000 in drug proceeds, wrapped in aluminum foil inside an orange bag, from an unknown female courier.

7. On January 26, 2021, in Downey, California, in an electronic communication using coded language, defendant TONG instructed defendant JIAXUAN HE to pick up approximately $226,600 in drug proceeds.

8. On January 26, 2021, in San Gabriel, California, defendant JIAXUAN HE possessed approximately $226,600 in drug proceeds concealed inside a white paper bag.

9. On March 23, 2023, in San Gabriel, California, defendant ZHAO possessed approximately $111,430 United States currency concealed inside a white plastic bag.

10. On April 10, 2023, in Arcadia, California, defendant YE picked up an unknown quantity of United States currency concealed inside a white plastic bag.

11. On April 10, 2023, in Arcadia, California, defendant YE picked up an unknown quantity of United States currency concealed inside a yellow plastic bag.

12. On April 10, 2023, in North Hills, California, defendant YE delivered approximately $60,000 in United States currency contained in white and yellow plastic bags to a United States currency customer.

13. On April 27, 2023, in Artesia, California, defendant YU deposited a cashier's check representing an unknown amount of United States currency at a Chase Bank ATM.

14. On April 27, 2023, in Artesia, California, defendant YU deposited approximately $100,000 of United States currency at a Chase Bank teller window.

15. On May 4, 2023, in La Verne, California, defendant YU possessed approximately $100,000 in United States currency concealed inside a gray backpack.

16. On May 4, 2023, in La Verne, California, defendant YANG possessed approximately $100,000 in United States currency concealed inside a black plastic bag.

17. On May 11, 2023, in Artesia, California, defendants SU and YU possessed approximately $50,000 in United States currency concealed inside a brown satchel.

18. On May 12, 2023, in San Gabriel, California, defendant ZHANG possessed approximately $150,000 in United States currency, concealed inside a white plastic bag.

FORFEITURE ALLEGATION ONE

[18 U.S.C. § 982]

1. Pursuant to Rule 32.2(a) of the Federal Rules of Criminal Procedure, notice is hereby given that the United States will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 982(a)(1), in the event of the defendant's conviction of the offense set forth in Count One of this Indictment.

2. The defendant, if so convicted, shall forfeit to the United States of America the following:

    (a) Any property, real or personal, involved in such offense, and any property traceable to such property; and

    (b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), and Title 18, United States Code, Section 982(b)(2), the defendant, if so convicted, shall forfeit substitute property, if, by any act or omission of the defendant, the property described in the preceding paragraph, or any portion thereof: (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty. Substitution of assets shall not be ordered, however, where the convicted defendant acted merely as an intermediary who handled but did not retain the property in the course of the money laundering offense unless the defendant, in

1 committing the offense or offenses giving rise to the forfeiture,
2 conducted three or more separate transactions involving a total of
3 $100,000.00 or more in any twelve-month period.

FORFEITURE ALLEGATION TWO

[18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)]

1. Pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure, notice is hereby given that the United States of America will seek forfeiture as part of any sentence, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), in the event of any defendant's conviction of the offenses set forth in Count Two of this Indictment.

2. Any defendant so convicted shall forfeit to the United States of America the following:

(a) all right, title, and interest in any and all property, real or personal, constituting, or derived from, any proceeds traceable to the offenses; and

(b) To the extent such property is not available for forfeiture, a sum of money equal to the total value of the property described in subparagraph (a).

3. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), any defendant so convicted shall forfeit substitute property, up to the value of the property described in the preceding paragraph if, as the result of any act or omission of said defendant, the property described in the preceding paragraph or any portion thereof (a) cannot be located upon the exercise of due diligence; (b) has been transferred, sold to, or deposited with a third party; (c) has been placed beyond the jurisdiction of the court; (d) has been

//

//

substantially diminished in value; or (e) has been commingled with other property that cannot be divided without difficulty.

                                                    A TRUE BILL

                                                         /S/
                                                    Foreperson

E. MARTIN ESTRADA
United States Attorney

MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division

J. MARK CHILDS
Assistant United States Attorney
Chief, International Narcotics,
Money Laundering, and
Racketeering Section

JULIE J. SHEMITZ
Assistant United States Attorney
International Narcotics, Money
Laundering, and Racketeering
Section